**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| BRISTOL-MYERS SQUIBB CO., E.R. SQUIBB & SONS L.L.C., ONO PHARMACEUTICAL CO., LTD., and TASUKU HONJO, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **MBD No. 16-MC-91079-MLW** |
| MERCK & CO., INC. and MERCK SHARP & DOHME CORP., | ) ) ) | **ORAL ARGUMENT REQUESTED** |
| Defendants. | ) ) | |
| v. | ) ) | |
| DANA-FARBER CANCER INSTITUTE, INC., GORDON FREEMAN, | ) ) ) | |
| Subpoena Recipients. | ) ) | |

**MERCK'S OPPOSITION TO THIRD PARTY SUBPOENA RECIPIENTS'
MOTION TO MODIFY THE SUBPOENAS**

Merck & Co., Inc. and Merck Sharp & Dohme (collectively, "Merck") respectfully

submit this Opposition to Dana-Farber Cancer Institute, Inc.'s and Gordon Freeman's

(collectively, "Dana-Farber") Motion to Modify (the "Motion") two third-party subpoenas Merck

served on Dana-Farber on February 19, 2016 (the "Subpoenas").  Although Dana-Farber

provided Merck with access to a small number of documents after Dana-Farber filed its motion,

Dana-Farber continues to withhold otherwise responsive documents.  Accordingly, for the

reasons that follow, this Court should deny Dana-Farber's Motion and, instead, order it to comply

fully with the Subpoenas without further delay.  Further, Merck respectfully requests that this Court schedule a hearing on the Motion to Modify and this Opposition.

## I.  Preliminary Statement

Dana-Farber's Motion arises out of a disagreement between Merck and Dana-Farber over the timing of Dana-Farber's production of documents in response to the Subpoenas.  Merck served the Subpoenas on Dana-Farber in connection with patent infringement litigation that Merck is currently defending in the District of Delaware against Bristol-Myers Squibb Co., E.R. Squibb & Sons L.L.C., Ono Pharmaceutical Co., Ltd., and Tasuku Honjo (collectively, "BMS") (these matters are collectively referred to herein as the "Delaware litigation").[1]  In the Delaware litigation, BMS is alleging that Merck's biologic drug, Keytruda® (pembrolizumab), which is used in cancer therapy, infringes certain patents owned or licensed by BMS.  Merck is asserting as defenses in the Delaware litigation, *inter alia*, that the patents are invalid because they are anticipated and obvious pursuant to 35 U.S.C. §§ 102 and 103, and because they do not satisfy the written description and enablement requirements of 35 U.S.C. § 112.

Merck served the Subpoenas on Dana-Farber because, among other things, Dana-Farber claims to have been directly involved in the purported invention of three of the BMS patents at issue in the Delaware litigation.

Dana-Farber has separately filed a correction of inventorship action in this district against BMS, *Dana-Faber Cancer Institute, Inc. v. Ono Pharmaceutical Co., Ltd., et al.,* No. 15-cv-13443-MLW (D. Mass.) (the "Dana-Farber litigation").  As discussed in more detail below, documents relevant to Dana-Farber's activities, which they identify as being contributions to the

---

[1]     *Bristol-Myers Squibb & Co. v. Merck & Co., Inc.*, Nos. 14-1131-GMS, 15-560-GMS, 15-572-GMS (D. Del.).

purported invention of the patents, likely have direct relevance to Merck's obviousness, written description, and enablement defenses in the Delaware litigation.

In its motion, Dana-Farber does not spend much time objecting to the relevance of the documents requested by the Subpoenas.  Instead, the main thrust of Dana-Farber's Motion, and Dana-Farber's principal objection to the Subpoenas, is that Dana-Farber's production in response to the Subpoenas should be delayed until a collateral discovery dispute between Dana-Farber and BMS is resolved in the Dana-Farber litigation.  Specifically, it asks for this Court to delay the production until BMS has "substantially produced all documents responsive to Dana-Farber's first set of document requests."  Mem. at 3.  Given the procedural posture in that case, however, Dana-Farber's request provides no date certain for the production in response to the Subpoena. Such an open-ended delay is untenable for Merck, which currently is facing a discovery deadline in the Delaware litigation of May 27, 2016 and currently has scheduled several upcoming depositions—including a deposition of the main inventor named on the BMS patents on April 12 and 13—in which the documents held by Dana-Farber are very likely relevant.

Contrary to what Dana-Farber argues in its Motion, the possibility that BMS may get access to Dana-Farber's documents before being required to produce its own is not an appropriate basis to resist the Subpoenas, particularly when such a delay would prejudice Merck in its defense in the Delaware litigation.  As a practical matter, if Merck does not obtain the documents before the depositions (particularly of the purported Japanese inventors and Ono witnesses), Merck faces the possibility of being effectively foreclosed from obtaining evidence regarding these documents from these witnesses, many of whom are Japanese nationals who may not travel to the United States a second time.  Under such circumstances, the Court should deny the Motion and order Dana-Farber and Freeman to comply forthwith.

## II. Background

Merck commercially markets the biologic drug Keytruda®, an anti-PD-1 antibody

therapeutic for the treatment of certain types of cancer.  BMS sued Merck on September 9, 2014,

June 30, 2015, and July 7, 2015 in the Delaware litigation.  Exs. 1-3.[2]  BMS is accusing Merck's

Keytruda® of infringing U.S. Patent Nos. 8,727,474; 9,073,994; and 9,067,999, respectively.

The '474, '999, and '994 patents (collectively, "the Honjo patents") claim the use of an anti-PD-1

antibody to treat cancer.  *See* Exs. 4-6.  Merck is challenging the validity of the Honjo patents in

the Delaware litigation and is asserting as defenses that the Honjo patents are anticipated and

obvious pursuant to 35 U.S.C. §§ 102 and 103, and do not satisfy the written description and

enablement requirements of 35 U.S.C. § 112.  Exs. 7-9.

Separately from the Delaware litigation, Dana-Farber brought suit against BMS on

September 9, 2015 in the District of Massachusetts alleging that Freeman, an employee of Dana-

Farber, was a co-inventor of the Honjo patents.  Ex.10.  Dana-Farber seeks correction of

inventorship pursuant to 35 U.S.C. § 256.  In its complaint, Dana-Farber alleges that Freeman

collaborated with Tasuku Honjo, a named inventor on the Honjo patents, and Clive Wood, a

researcher at Genetics Institute, to research the PD-1 pathway beginning in 1999.  *Id.* at ¶ 9.

Dana-Farber contends that, at an October 25, 1999 meeting, Freeman shared with Honjo that he

and Wood had discovered that PD-L1 is the ligand to PD-1 and that PD-L1 is expressed by at

least some cancer cells.  *Id.* at ¶¶ 28-31.  Dana-Farber further alleges that, at that meeting,

Freeman raised blocking the PD-1 pathway in order to enhance, or upregulate, the immune

response to cancer, thus contributing to the conception of the method claimed in the Honjo

---

[2]      All citations to "Ex." refer to exhibits attached to the Declaration of Jack Pirozzolo in Support of Merck's
Opposition to Third-Party Subpoena Recipients' Motion to Modify the Subpoena ("Pirozzolo Decl."), filed
contemporaneously with this Opposition.

patents.  *Id.* at ¶ 31.  The Dana-Farber complaint also catalogs additional collaborative activities amongst Freeman, Wood, and Honjo which resulted in several PD-1-related publications and patents which are prior art to the Honjo patents.  *Id.* at ¶¶ 32-37.

Merck has sought to obtain information regarding this collaboration from BMS in the Keytruda® litigation and has served discovery requests on BMS related to the collaborative activities described in Dana-Farber's complaint.  *See, e.g.*, Ex. 11 at Nos. 53, 55-59; Ex. 12 at Nos. 62-64, 73-74; Ex. 13 at Nos. 83-87.  Such collaborative activities are relevant to the patents' validity and BMS has produced certain documents responsive to these requests and has represented that its production of documents is essentially complete.

Merck, however, believes that Dana-Farber is in possession of additional relevant information, including information that would not likely be in BMS's possession, custody, or control.  For instance, Dana-Farber may be in possession of communications, including emails, between Freeman and Wood that would not have gone to BMS.  It may also be in possession of such information as:  (a) records of Freeman's alleged conception or reduction to practice of the claims of the Honjo patents; (b) experimental data from Dana-Farber scientists for key prior art publications; (c) records relating to prior art anti-PD-1 antibodies generated by Dana-Farber scientists; and (d) notes or presentation slides by Freeman or other Dana-Farber scientists regarding discovery of the PD-1 pathway and its potential application to cancer therapy.  Such information may well shed light on, for example, the understanding and expectations of persons of skill in the art at the time of the purported invention, prior art relevant to the purported invention in the Honjo patents, or the relevant properties of anti-PD-1 antibodies at the time of the alleged invention.

ACTIVE 213898089v 9

—

Merck issued the Subpoenas to Dana-Farber seeking such information.  Exs. 14 and 15. Dana-Farber's counsel has represented to Merck that it is in possession of documents that support the contentions in its complaint and are responsive to the Subpoenas.  Nevertheless, after receiving the Subpoenas, Dana-Farber raised a series of objections to them.  Most significantly for purposes of the Motion, Dana-Farber claimed that the Subpoenas imposed an "undue burden" on Dana-Farber because production of the documents would potentially put Dana-Farber at a tactical and strategic disadvantage in the Dana-Farber litigation.  Mem. at 6-7.   Dana-Farber informed Merck that BMS had filed motions in the Dana-Farber litigation and had refused to provide discovery until those motions were decided.  *Id.*  Dana-Farber, in response, filed a motion to compel production.  As of today, the procedural motions and the motion to compel are pending in the Dana-Farber litigation and no hearing date has been set.  In its motion to compel production by BMS, Dana-Farber argued that production of information in response to the Subpoenas in the Delaware litigation would result in BMS obtaining Dana-Farber's documents (by way of the Delaware litigation) before Dana-Farber would be able to obtain BMS's documents.[3]  Simultaneously with its motion to compel production by BMS, Dana-Farber filed the Motion to modify Merck's subpoena.

Merck then immediately filed a Motion to Expedite a Hearing on the Motion.  Merck asked for an expedited hearing in order to get a ruling and access to the requested documents in advance of upcoming depositions.  *See* Motion to Expedite, ECF No. 6.  Following Merck's Motion to Expedite, Dana-Farber offered to provide Merck access to a subset of the documents requested by the Subpoena if Merck agreed to withdraw its Motion to Expedite.  Dana-Farber and Merck then reached an agreement pursuant to which Merck would withdraw the Motion to

---

[3]      Pl. Dana-Farber Cancer Inst., Inc.'s Mem. Supp. Mot. Compel, *Dana-Faber Cancer Inst., Inc. v. Ono Pharma. Co., Ltd., et al.,* No. 15-cv-13443-MLW, at 6 (D. Mass.), ECF No. 78.

ACTIVE 213898089v 9

Expedite, Dana-Farber would give Merck access to certain documents on or before April 8, 2016, the parties would otherwise reserve all rights and would brief and argue the Motion with a standard briefing schedule, and Merck would be permitted to seek an expedited hearing after April 25, 2016 if no hearing had occurred before then.  Merck and Dana-Farber also agreed that Merck would cooperate to have the matter heard in the Dana-Farber litigation.  *See* Notice of Withdrawal, ECF No. 13.  Merck then withdrew its request for an expedited hearing.  *Id.*

On March 31, 2016, Dana-Farber made a small number of documents responsive to the Subpoenas available in their offices under controlled conditions for Merck's inspection.  The inspection and anticipated production of this small number of documents does not moot any of Merck's subpoena topics, described in section III(c), *infra*.  After reviewing these documents, Merck believes that Dana-Farber possesses additional responsive documents to each topic.  For instance, Dana-Farber has not yet agreed to produce (a) email communications related to the PD-1 pathway or the October 25, 1999 meeting from between January 1, 1999 to July 1, 2004 for Freeman, Wood, Honjo and/or other collaborators (topics 1 and 2); (b) documents reflecting agreements related to PD-1 between or amongst collaborators or their employers from before July 1, 2004 (topic 3); (c) draft publications related to the PD-1 pathway co-authored by one of the key collaborators from between January 1, 1999 and July 1, 2004 (topic 4); or (d) documents concerning the Honjo patents (topic 5).

### III. Argument

#### A.  The Legal Standard

The Federal Rules of Civil Procedure permit any party to serve a subpoena commanding a non-party to produce designated documents "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P.

26(b)(1) and 45.  A court may modify such a subpoena if the non-party shows that the subpoena

subjects the non-party to an undue burden or fails to allow a reasonable time to comply.  Fed. R.

Civ. P. 45(d)(3)(A)(i) and (iv).  "The party resisting discovery bears the burden of showing that

the subpoena imposes an undue burden, and it 'cannot rely on a mere assertion that compliance

would be burdensome and onerous without showing the manner and extent of the burden and the

injurious consequences of insisting upon compliance.'"  *In re New Eng. Compounding Pharm.,*

*Inc.*, No. MDL 13-2419-FDS, 2013 WL 6058483, at *6 (D. Mass. Nov. 13, 2013) (quoting

*Sterling Merch., Inc. v. Nestle, S.A.*, No. 06-1015-SEC, 2008 WL 1767092, at *2 (D.P.R. Apr.

15, 2008)).

In determining whether a subpoena imposes an "undue burden" on a non-party, courts

consider "(1) the relevance of the information requested; (2) the need of the party for the

documents; (3) the breadth of the document request; (4) the time period covered by the request;

(5) the particularity with which the party describes the requested documents; (6) the burden

imposed; and (7) the expense and inconvenience to the non-party."  *LSI Corp. v. Vizio, Inc.*, 2012

U.S. Dist. LEXIS 86357, Misc. Bus. Dkt. No. 12-mc-91068-DJC (D. Mass. May 24, 2012), at

*3.  "No single factor in the undue-burden test is dispositive."  *Rockstar Consortium US LP et al.*

*v. Google, Inc.*, Misc. Civ. Action No. 14-91322-FDS, 2015 U.S. Dist. LEXIS 139770, at *13

(D. Mass. Oct. 14, 2015).  These considerations weigh heavily in favor of enforcing the

Subpoenas and against modifying them as Dana-Farber requests.

### B.  The Requested Documents are Relevant and Needed

The first two criteria, relevance and need, easily weigh in Merck's favor here.  The

requested documents are directly relevant to the Delaware litigation.  The documents relate to the

alleged conception and reduction to practice of the Honjo patents, which are fundamental to

Merck's priority arguments.  The experiments and communications relate to prior art references that anticipate or render obvious the Honjo patents pursuant to 35 U.S.C. §§ 102 and/or 103. *See, e.g.*, Ex. 10 at ¶¶ 33-37 (discussing collaborative activities that led to key prior art publications).  And the properties and generation of prior art anti-PD-1 antibodies are relevant to Merck's written description and enablement defenses, under 35 U.S.C. § 112.  For instance, disclosures conveyed by Clive Wood and Gordon Freeman to the named inventors qualify as prior art under 35 U.S.C. § 102(f).  Such information may alone, or in combination with other information that was known or publically available, render the claimed methods obvious.  Similarly, communications between researchers at Dana-Farber, Genetics Institute, Ono Pharmaceutical, and Kyoto University also reflect the understanding of persons of skill in the art regarding the PD-1 pathway prior to and at the time of the purported invention.  Contemporaneous statements about what is shown or described in key prior art publications are also probative of what a skilled person would have understood the reference to teach at the time of the alleged invention.  Such evidence is probative of whether the patents are obvious pursuant to 35 U.S.C. § 103.  In addition, information about the properties of anti-PD-1 antibodies and their effect on the PD-1 pathway is relevant to Merck's defense that the Honjo patents do not adequately describe the genus of claimed antibodies as required by 35 U.S.C. § 112.  Indeed, Dana-Farber has not seriously argued that any of the subpoenaed documents lack relevance to the Delaware litigation.

Dana-Farber has argued that Merck does not need the documents because it can get them from other sources.  Mem. at 5, 7-8.  Such an argument should not be given much weight here. To begin with, the mere fact that Merck might be able to obtain these documents elsewhere does not relieve Dana-Farber of its obligation to produce documents.  *See In re New Eng.*

*Compounding Pharm., Inc.*, 2013 WL 6058483, at *37 ("The mere availability of the documents from another source . . . does not preclude a subpoena directed to a nonparty if the party serving the subpoena can show that it is more expeditious to obtain the documents from a witness.").  In any event, Merck has tried to obtain the documents from other sources.  Merck has requested documents related to Plaintiffs' collaborative activities with Dana-Farber directly from BMS, Exs. 11-13, and BMS has represented that it has produced those responsive documents in its possession, custody, or control.[4]  Merck has also subpoenaed documents related to Wood's alleged contribution to the conception of the Honjo patents from Pfizer Inc., the successor-in-interest to Genetics Institute.  Ex. 16.  Pfizer's counsel has represented that Pfizer is collecting responsive documents for production, but has warned that it may not have many of the requested documents because the information passed through several corporate entities and none of Pfizer's current employees were involved in the collaboration with Freeman or Honjo.[5]  Dana-Farber and Freeman may well be the only entity in possession of certain documents, including, for example, key communications between Wood and Freeman.

### C.     The Requests are Narrowly Tailored as to Subject Matter and Time Frame and Are Described with Particularity

The next three considerations also weigh in favor of enforcing the Subpoenas.  Merck's Subpoenas are narrowly drafted to seek production of only those documents directly relevant to its defenses in the Delaware litigation and which correspond to the facts asserted in Dana-Farber

---

[4]     Dana-Farber has suggested that Merck should obtain the requested documents by moving to compel production of the documents by BMS in Delaware.  Mem. at 7-8.  Merck has no basis for filing a motion to compel the requested documents from BMS at this time.  BMS has not stated that it is withholding documents that overlap with the documents sought from Dana-Farber or Freeman.  Moreover, as explained in section II, the documents sought by Merck's subpoenas to Dana-Farber and Freeman are intended to encompass documents which would not be in the possession, custody, or control of BMS.

[5]     Genetics Institute was acquired by American Home Products in December 1996, Ex. 17, which became Wyeth Pharmaceutical Co. in March 2002, Ex. 18.  Pfizer acquired Wyeth in January 2009, Ex. 19.

ACTIVE 213898089v 9

and Freeman's inventorship complaint.  Ex. 14 (Dana-Farber Subpoena); Ex. 15 (Freeman

Subpoena).  More specifically, Merck's subpoena topics cover:

- documents related to an October 25, 1999 meeting (Topic 1);

- January 1, 1999 to July 1, 2004 communications between specific individuals

  involved in the collaboration, concerning the topics of the collaboration (Topic 2);

- agreements entered into prior to July 1, 2004 between collaborators concerning

  the PD-1 pathway (Topic 3);

- January 1, 1999 to July 1, 2004 draft scientific publications co-authored by one of

  the key collaborators concerning the subject matter of the collaboration (Topic 4);

  and

- non-privileged documents relating to the Honjo patents (Topic 5).

To the extent possible, the topics are limited to specific time periods, individuals, and the

specific subject matter of the collaboration.[6]

### D. Collecting and Producing the Documents Is not Burdensome, Inconvenient or Unduly Expensive for Dana-Farber and Freeman

Dana-Farber also does not face any undue expense, inconvenience or burden in collecting

and producing the subpoenaed documents.  Merck expects that Dana-Farber has already

collected and reviewed the requested documents in preparation for filing the Dana-Farber

litigation suit and in anticipation of receiving document requests from BMS in that matter.

---

[6]        Dana-Farber's objections do not identify, with any specificity, any substantial categories of documents that present a burden in terms of cost or volume of documents.  *See* Ex. 20.  In its specific objections (although not in its Motion), Dana-Farber claimed that Merck's Subpoenas topics are overly broad because they extend to July 1, 2004 and "the patents in suit claim priority to no later than February 6, 2003."  *Id.* at *3-4.  Dana-Farber is mistaken. First, the Honjo patents claim priority to three priority applications, the latest of which is PCT Application No. JP03/08420, filed July 2, 2003.  Ex. 4-6.  Second, Merck's topics extend approximately one year after this final priority date to capture relevant post-priority evidence, such as retrospective statements about the patent filings between the alleged co-inventors, experiments regarding the PD-1 pathway which demonstrate the skill and understanding of those skilled in the art at the time of the patents, and any communications or agreements wrapping up the collaboration between Freeman, Wood, and Honjo.

Courts have consistently recognized that no undue burden exists under such circumstances. *See, e.g., In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, No. 09 MDL 2058 (DC), 2009 WL 4796169, at *2 (S.D.N.Y. Nov. 16, 2009) (finding burden would be "slight" where "[defendants] have already collected, reviewed, and organized the documents for production in other proceedings"); *Waldman v. Wachovia Corp.*, No. 08 Civ. 2913(SAS), 2009 WL 86763, at *3 (S.D.N.Y. Jan 12, 2009) (same); *In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, No. MDL 1446, H-01-3624, 2002 WL 31845114, at *2 (S.D. Tex Aug. 16, 2002) (same). Indeed, in its own motion to compel production by BMS, Dana-Farber itself argued that BMS should be compelled to produce the requested documents because "[p]roducing relevant documents . . . now, if they have already been collected and reviewed, imposes no added burden . . . ."[7]

No doubt recognizing that it cannot successfully claim undue burden in the conventional sense of the term, Dana-Farber presses a different characterization of "undue burden." Dana-Farber argues that it faces an "undue burden" because producing the documents to Merck in the Delaware litigation would give BMS some sort of tactical advantage in the Dana-Farber litigation, specifically, that BMS would potentially see Dana-Farber's documents before Dana-Farber would see BMS's documents. *See* Mem. at 6-7; Ex. 20 at *1. The Court should not accept this argument, for at least three reasons.

First, an alleged tactical disadvantage in a separate litigation is not the type of "undue burden" the Federal Rule of Civil Procedure contemplate as a basis to modify a subpoena. *See, e.g.,* Fed. R. Civ. P. 45(d) & Advisory Committee Notes (discussing the considerations for protecting a third party subject to a subpoena and discussing the bases for a motion to quash or modify); *see also id.* Advisory Committee Notes, 1991 Amendment (illustrating as "undue

---

[7]        Pl. Dana-Farber Cancer Inst., Inc.'s Mem. Supp. Mot. Compel at 8, *Dana-Farber Cancer Inst., Inc. v. Ono Pharma. Co., Ltd. et al.*, No. 1:15-cv-13443-MLW (D. Mass. Mar. 18, 2016), ECF No. 78.

ACTIVE 213898089v 9

burden" a travel burden that a subpoenaed person may face, particularly if that person does not have personal knowledge of matters).  Dana-Farber has not cited any authority in support of its position that the possible asymmetrical exchange of documents in a separate litigation is an "undue burden" permitting modification.[8]  Indeed, courts considering similar issues wherein a party seeks to resist discovery because of its impact in related litigation have held that the collateral effect of discovery in another case is not a basis to bar discovery.  *See Cuviello v. Feld Entm't*, No. 13-cv-03135-LHK, 2014 U.S. Dist. LEXIS 160371, at *6 (N.D. Cal. Nov. 14, 2014) ("[I]t is not proper to bar relevant discovery in one action simply because it may also be relevant to another case."); *see also In re Republic of Ecuador*, 2010 U.S. Dist. LEXIS 132045, at *23-24 (N.D. Cal. Dec 1, 2010) (same).

Second, Dana-Farber has not identified any specific harm or injury that will result if it is compelled to produce the requested documents.  *See Biological Processors of Alabama, Inc. v. N. Georgia Envtl. Servs., Inc.*, No. 09-3673, 2009 WL 1663102, at *1 (E.D. La. June 11, 2009), *modified on reconsideration*, No. 09-3673, 2009 WL 2160984 (E.D. La. July 15, 2009) ("When the burdensomeness of a subpoena is at issue, the onus is on the party who alleges the burden to establish the burden with specificity . . . ."); *see also Flatow v. The Islamic Republic of Iran*, 196 F.R.D. 203, 207 (D.D.C. 2000), *opinion aff'd in part*, *vacated in part sub nom. Flatow v. Islamic Republic of Iran*, 305 F.3d 1249 (D.C. Cir. 2002) ("[B]are assertions of a burden do not satisfy the specificity requirement of an undue burden objection.").  To demonstrate the undue burden, the movant must provide "affirmative and compelling proof."  *Ameritox, Ltd. v. Millennium*

---

[8]       In its memorandum, Dana-Farber improperly attempts to import a prejudice standard into the undue burden inquiry, citing three cases: *Bio-Vita, Ltd. v. Biopure Corp.*, 138 F.R.D. 13, 17 (D. Mass. 1991); *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 755 F.3d 55, 59 (1st Cir. 2014); and *Dart Indus. Co. v. Westwood Chem., Co.*, 649 F.2d 646, 649 (9th Cir. 1980).  The cited cases, however, involved wholly different factual situations.  As we explained in section III(A), the appropriate test for whether a subpoena constitutes an undue burden is the seven-factor test set forth in *LSI Corp.*, 2012 WL 1926924, at *3.

ACTIVE 213898089v 9

*Labs., Inc.*, No. 12-CV-7493, 2012 WL 6568226, at *2 (N.D. Ill. Dec. 14, 2012) (citation omitted).

To be sure, Dana-Farber complains about BMS's "procedural maneuvering" that might create an asymmetrical exchange of information.  Mem. at 2.  Yet the harm that Dana-Farber articulates goes only to the timing of the exchange of information, not the substance.  Dana-Farber does not claim (nor could it) that the contents of the production will be any different.  It still will be producing the documents to BMS, and the extra time does not change their contents.  This is not, for example, a situation in which Dana-Farber is facing the prospect of disclosing documents it would not otherwise produce to BMS.  In any event, Dana-Farber could certainly request additional time to review the BMS documents it ultimately receives in its case if the asymmetrical production reduces the time Dana-Farber has to review the documents in a material way.

Third, whatever potential prejudice Dana-Farber may face in its matter is far outweighed by the prejudice Merck faces.  Merck needs the documents soon.[9]  Fact discovery is set to close in the Delaware litigation in eight weeks (May 27, 2016), *see* Exs. 21-22, and Merck anticipates participating in at least 28 depositions in the United States and Japan between April 12 and June 10, 2016, *see* Exs. 23-24.[10]  Merck may not be able to recall witnesses to obtain testimony regarding information contained in the Dana-Farber and Freeman documents if the documents are not produced prior to the depositions, given that many of the witnesses are Japanese nationals

---

[9]     Dana-Farber suggests that Merck should request additional time for fact discovery in the Delaware litigation so that Dana-Farber and Freeman do not have to produce the requested documents at this time.  Merck should not be required to delay defending itself against BMS's infringement accusations when potential damages are accumulating.

[10]     The parties to the Merck litigation are in discussions regarding a short extension to the close of fact discovery and modifying the date of one of the BMS witnesses.  However, at this time, it is unclear whether any agreement will be reached or what that agreement will be.

ACTIVE 213898089v 9

and reside outside the United States.  Given the significance of the subpoenaed documents, Merck faces substantial prejudice if it does not receive the requested documents from Dana-Farber and Freeman prior to the upcoming depositions. Under the circumstances, here, Dana-Farber's request to delay production is not reasonable.

## IV. Conclusion

For the reasons set forth above, Merck respectfully requests that the Court deny the Motion.  Merck further requests that the Court order Dana-Farber to comply with the Subpoenas and promptly produce the subpoenaed documents.

## Request for Oral Argument

Pursuant to L.R. 7.1(d), Merck hereby requests oral argument on the Motion and Opposition.

DATED: April 1, 2016

Respectfully submitted,

SIDLEY AND AUSTIN LLP

_/s/ Jack W. Pirozzolo_
Jack Pirozzolo (#564879)
60 State Street, 36th Floor
Boston, Massachusetts 02109
(617) 223-0304
jpirozzolo@sidley.com


Jeffrey P. Kushan (pro hac motion forthcoming)
Kirsten E. Braun (pro hac motion forthcoming)
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8914
jkushan@sidley.com
kbraun@sidley.com

_Counsel for Defendants Merck & Co., Inc. and_
_Merck Sharp & Dohme Corp._

ACTIVE 213898089v 9

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2016 I served this document via the CM/ECF system on counsel for Dana-Farber Cancer Institute, Inc. and Gordon Freeman, including:

Donald R. Ware
Barbara A. Fiacco
Sarah S. Burg
Foley Hoag LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600

*Jack W. Pirozzolo*
Jack W. Pirozzolo

ACTIVE 213898089v 9